1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GARY ECCHER,

11           Petitioner,                    No. CIV S-03-0020 GEB DAD P

12       vs.

13   K. MENDOZA-POWERS, Warden,      <u>ORDER AND</u>
     et al.,
14                                    <u>FINDINGS AND RECOMMENDATIONS</u>
             Respondents.
15   _____/

16           Petitioner is a state prisoner proceeding pro se with this petition for a writ of

17   habeas corpus.  Petitioner is in custody pursuant to a 1986 judgment of conviction on a charge of

18   second degree murder entered in the Orange County Superior Court.  In the petition for writ of

19   habeas corpus filed in this action on January 8, 2003, petitioner challenges a decision of the

20   California Board of Parole Hearings (Board) rendered on January 11, 2001, finding him not

21   suitable for parole.  For the reasons set forth below, the undersigned recommends that

22   petitioner's application for a writ of habeas corpus be denied.

23                   PROCEDURAL AND FACTUAL BACKGROUND

24           In 1986, petitioner was convicted of second degree murder and received a

25   sentence of fifteen years to life in state prison.  (Pet. at 1.)  The facts of petitioner's crime are as

26   follows:

1

Lianne Lando invited friends to a pool party on the afternoon of August 10, 1985, at the home she shared with her boyfriend, Gary Eccher.  Lando and Eccher were not only roommates but also partners in selling cocaine.

James and Toni Ellis were the first to arrive for the party.  They found the yard gates locked and thought no one was home.  After waiting a while, James looked through a bedroom window and saw a bloody pillow on the floor.  He entered the house through another window and went to the bedroom where he found signs of a struggle.  The waterbed was covered with blood.  In the connecting bathroom he saw Lando's nude body draped over the bathtub, her arms and head submerged under bloody water.  The police were called.

At approximately 3:30 p.m. police officer Helmick and fire captain Goldsmith entered the house.  They found Lando's body in the bathroom.  She had been strangled with an electrical cord, which was still around her neck, and had been savagely beaten about the face and head.  The bloody scene and most of the items ultimately seized were in plain view.

After Goldsmith determined Lando was dead, Helmick searched the house for additional persons.  Finding none, he and Goldsmith left the house.  Police officer McKernon, who had entered during this initial search, remained as a guard inside the residence.

Once outside, Helmick began to interview witnesses.  Soon other officers arrived, including crime scene investigators who entered the house and began "processing the crime scene."  They took photographs, made diagrams and seized articles in plain view in the bedroom, including the bloody sheets and pillows, a broken lamp, and a plastic trash can smeared with blood.  Other items not in plain view were also seized.

At about 6 p.m. Investigator Whitson took the trash can into the kitchen, dusted it, and found a latent palm print – later identified as Eccher's – in the blood.  Blood stains consistent with both Eccher's and Lando's blood were found later on the sheets.

Without calling a halt to these events, lead investigator Martin dispatched an officer at 6:15 to get a search warrant.  The magistrate was not informed of the activities in progress.  The warrant, eventually executed at 9:20 p.m., did not mention the lamp, trash can, sheets, or Lando's body, all of which had already been seized.  None of the items seized pursuant to the warrant were admitted in evidence at trial.

Eccher had taken half a pound of cocaine and $27,000 in drug money from the house.  He fled to Mexico where he was apprehended on September 14.

1
2
3
4
5
6
7
8
9
10

> Prior to trial Eccher moved to suppress all evidence seized during the five-hour warrantless search of his house.  The court denied the motion as to most of the evidence, including the latent palm print, on the grounds of plain view and inevitable discovery.  The court also found the fragility of blood evidence – exacerbated by the large number of investigators milling around the crime scene – created an exigency justifying immediate seizure of the palm print before it could be inadvertently destroyed.
>
> The court did order certain items suppressed which had not been in plain view.  These included a bloody light bulb and lamp shade found underneath the bedding and some beer bottles found in the kitchen.
>
> At trial Eccher testified he killed Lando during an argument over his continued use of their saleable cocaine.  The jury convicted him of murder in the first degree.  The court denied his motion for new trial but reduced the crime to second degree murder.

11  (Pet., Ex. 9 at 2-4.)

12          On January 11, 2001, petitioner appeared before the Board for his third parole

13  consideration hearing.  (Pet., Ex. 1; Pet'r's Reply to Resp't's Supplemental Answer, at 10.)  The

14  Board found petitioner unsuitable for parole and deferred further parole consideration for two

15  years.  (Pet., Ex. 1 at 58-60.)[1]

16          Petitioner challenged the Board's decision in a petition for writ of habeas corpus

17  filed in the Sacramento County Superior Court.  (Pet., Ex. 2.)  That petition was denied by order

18  dated December 21, 2001.  (Id.)  Petitioner subsequently filed a motion for reconsideration of the

19  Superior Court's decision, which was denied by order dated January 10, 2002.  (Id.)  Petitioner

20

21          [1] Subsequent to the parole hearing at issue in the instant petition, petitioner received parole hearings in 2003 and 2005, at which he was again found unsuitable for parole.  (Pet'r's
22  June 30, 2006 "Motion for Judicial Notice" (MJN).)  Petitioner has provided evidence that he was granted habeas relief from the Board's 2003 decision by the Orange County Superior Court
23  on the ground that the Board "lacked a factual basis for its determination petitioner was unsuitable for parole."  (Exhibit attached to MJN at 2.)  However, from the evidence submitted
24  by petitioner it appears that in granting relief, that state court merely required the Board to conduct a new parole suitability hearing, which it did in January of 2005.  (Id. at 2-3.)  There is
25  no evidence in the record before this court regarding any other disposition of the matter pursuant to the Superior Court's order granting habeas relief.  However, this court has independently
26  verified that petitioner remains in custody.

1   next challenged the Board's decision in a petition for writ of habeas corpus filed in the California

2   Court of Appeal for the Third Appellate District.  (Pet., Ex. 3.)  That petition was summarily

3   denied by order dated February 28, 2002.  (Id.)  Petitioner subsequently filed a petition for a writ

4   of habeas corpus in the California Supreme Court.  (Pet., Ex. 4.)  That petition was summarily

5   denied by order dated October 16, 2002.  (Id.)

6          Petitioner filed the instant petition for a writ of habeas corpus on January 8, 2003.

7   Respondents filed an answer on June 30, 2003.  Petitioner filed a traverse on September 3, 2003.

8   Respondents filed a supplemental answer on July 18, 2005, and petitioner filed a supplemental

9   traverse on September 29, 2005.

10                                     ANALYSIS

11  I.  Standards of Review Applicable to Habeas Corpus Claims

12         A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

13  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

14  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

15  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

16  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

17  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

18  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

19  (1972).

20         This action is governed by the Antiterrorism and Effective Death Penalty Act of

21  1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

22  1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

23  habeas corpus relief:

24              An application for a writ of habeas corpus on behalf of a
            person in custody pursuant to the judgment of a State court shall
25          not be granted with respect to any claim that was adjudicated on
            the merits in State court proceedings unless the adjudication of the
26          claim -

                                    4

1

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2

3

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

5    28 U.S.C. § 2254(d).  <u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v.</u>

6    <u>Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).

7            The court looks to the last reasoned state court decision as the basis for the state

8    court judgment.  <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir.2004).  Where the state court

9    reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

10   habeas court independently reviews the record to determine whether habeas corpus relief is

11   available under section 2254(d).  <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003);

12   <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

13   reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

14   AEDPA's deferential standard does not apply and a federal habeas court must review the claim

15   de novo.  <u>Nulph v. Cook</u>, 333 F.3d 1052, 1056 (9th Cir. 2003); <u>Pirtle v. Morgan</u>, 313 F.3d 1160,

16   1167 (9th Cir. 2002).

17   II.  <u>Petitioner's Claims</u>

18           Petitioner claims that his right to due process was violated when the Board failed

19   to find him suitable for parole at his third parole hearing in 2001.  He argues that the evidence

20   shows he would not pose a danger to the public if released.  (Pet. at 6-8.)  He further argues that

21   the Board is failing to set parole release dates in a manner that provides uniform terms for

22   inmates who have committed offenses of similar gravity and magnitude, in violation of

23   California law.  Petitioner argues that he has already served more time than California law

24   requires for his crime and that he has served more time in prison than other inmates who have

25   committed similar or more serious crimes.  (<u>Id.</u> at 3-6.)  Petitioner contends that the Board did

26   /////

1   not evaluate his eligibility for parole "with an appreciation for the proportionality of his sentence

2   or the gravity of the threat he poses to the public compared with other murderers." (Id. at 7.)

3          Petitioner also argues that the evidence does not support the Board's finding that

4   he needs further therapy in order to become eligible for parole.  (Id. at 8-9.)  He argues that the

5   evidence demonstrates he has taken advantage of all available therapy and that he has learned to

6   cope with stress in a nondestructive manner.  Petitioner also notes that his "BPT Psych Report"

7   and "BPT Counselor's Report" found that he would be "an excellent candidate for parole" and

8   that he was a "low degree of threat to the public." (Id. at 8; see also Pet., Exs. 5, 6.)

9          Petitioner contends that the evidence does not support the Board finding that his

10  crime was "especially callous." (Pet. at 9.)  Petitioner provides evidence of other cases where

11  persons convicted of murder were released on parole and served less time than petitioner.  (Pet.,

12  Ex. 11.)  Petitioner further argues that the Board improperly found him ineligible for parole

13  based on the fact that his crime was "cruel, heinous and atrocious," because those terms are

14  unconstitutionally vague.  (Pet. at 11.)

15         Petitioner also claims that the Board discriminated against him when it found him

16  unsuitable for parole because it denied him "a full and fair consideration for parole based on his

17  disability," in violation of the Americans with Disabilities Act.  (Id. at 12.)  He explains that

18  "specifically, the BPT has refused to set a parole release date for petitioner due to his substance

19  abuse history/addict which was a causative factor in the crime," and that "the BPT has failed to

20  provide petitioner an individualized assessment of his future dangerousness because of this

21  disability." (Id. at 13.)  Petitioner states that he has received treatment for substance abuse and

22  has been "drug and alcohol free since 1985 by his choice." (Id.)

23         Next, petitioner argues that the Board decision finding him unsuitable for parole

24  violated the Ex Post Facto Clause because the definition of criminal conduct has changed since

25  he committed his crime.  (Id. at 14-17.)  Petitioner explains that the percentage of persons found

26  suitable for parole at the first and all subsequent parole suitability hearings has declined

6

1 approximately 10-15% since 1985, when he committed his crime.  (Id. at 14.)  He argues that the

2 current Board is unwilling to grant parole for prisoners who would have received a parole date at

3 the time he committed his crime.  Petitioner notes that newspaper articles report that former

4 Governor Gray Davis expressly refused to grant parole to inmates convicted of murder.

5 Petitioner claims that the Board's refusal to grant him a parole date violated the Ex Post Facto

6 Clause because the Board "is applying the parole guidelines in a fixed and mechanical way."  (Id.

7 at 17.)  Specifically, petitioner complains that the Board has used fixed and unchanging factors

8 multiple times to deny him a parole date.  Finally, petitioner complains that his minimum 15 year

9 sentence and the Board's "own matrix for second degree murder (§2403(c)) are not given any

10 weight in the individualized determination process."  (Id. at 18.)

11 III.  State Court Opinion

12          In the present case, both the California Supreme Court and the California Court of

13 Appeal summarily denied petitioner's state habeas petitions challenging the Board's January 11,

14 2001 decision denying petitioner release on parole.  The order issued by each of these courts is

15 "an unexplained order," i.e., "an order whose text or accompanying opinion does not disclose the

16 reason for the judgment."  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).  When confronted

17 with a state court's unexplained order, the federal court applies the following presumption:

18 "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained

19 orders upholding that judgment or rejecting the same claim rest upon the same ground."  Id. at

20 803.  In applying the look-through presumption, unexplained orders are given no effect.  Id. at

21 804.  See also Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000) (holding that

22 where the highest state court to reach the merits of a habeas petition issued a summary opinion

23 that does not explain the rationale of its decision, federal court review under § 2254(d) is of the

24 last explained state court opinion to reach the merits).

25          The Sacramento County Superior Court issued an order that set forth reasons for

26 denying habeas relief on petitioner's claims.  This court will look through the unexplained orders

of the California Supreme Court and the California Court of Appeal to the decision of the

Sacramento County Superior Court in order to determine whether the state courts' adjudication

of petitioner's federal claims satisfies the standards set forth in § 2254.

The Sacramento County Superior Court explained the rationale of its decision to

deny petitioner habeas relief as follows:

> Petitioner seeks habeas corpus relief from the Board of Prison
> Terms's denial of parole for him on January 11, 2001.
>
> Petitioner's first claim is that there is no evidence in the record to
> support the Board panel's finding of unsuitability for parole.
>
> The standard for judicial review of a finding by a parole board
> panel is that there is "some evidence" to support the panel's
> conclusion (Superintendent v. Hill (1985) 472 U.S. 445, 456-457;
> In re Powell (1988) 45 Cal.3d 894, 903-904).
>
> In this case, there was "some evidence" to support the conclusion.
> It is not unreasonable for the Board panel to conclude that
> strangulation by a lamp cord involves special cruelty to the victim,
> when the victim had also been beaten and struck with the lamp
> itself just before being strangled (see generally 15 Cal. Code Reg. §
> 2402(c)(1)(C), (D) [guidelines only]).  Petitioner had past arrests
> including one for assault, and one drunk driving conviction,
> indicating an increase in the seriousness of his criminal conduct
> (see generally 15 Cal. Code Reg. 2402(c)(2) [guidelines only]).
> Further, he admitted having a gambling problem at the time, as
> well as a drug and alcohol problem (see generally 15 Cal. Code
> Reg. § 2402(c)(3)(5) [guidelines only])  With regard to his
> gambling problem, it is notable that the Board considered his 1996
> CDC 115 violation for gambling-related matters as so bothersome
> as to show a need for a lengthier period of time of incarceration.
> Indeed, the 1996 CDC 115 alone is "some evidence" to support the
> Board panel's denial of parole, as it showed that petitioner's
> gambling problem was a continuing one (see generally 15 Cal.
> Code Reg. § 2402(c)(6) [guidelines only]).  It is not unreasonable
> to infer from that that his alcohol and drug problems also might not
> be resolved.  His willingness to continue engaging in criminal
> behavior or behavior related to criminal activity alone is a
> sufficient reason to deny someone parole, and it cannot be said that
> the Board panel was arbitrary in utilizing the 1996 CDC 115 as a
> significant reason to deny his parole.  As such, petitioner's first
> claim is denied.
>
> Petitioner next claims that the Board panel abused its discretion in
> failing to read all of the documents in petitioner's file.  First,
> petitioner claims that the Board panel did not read his parole

package plan, his six letters of support from churches, his support letter from his trial attorney, or his "resumes" signed by California attorneys. This is not so. The Board panel took out the parole plan at the hearing and went through it with petitioner, and thoroughly considered his Orange County plans which appeared to be positive and in his favor. The Board panel also specifically noted his letters of support from several churches. As for the support letter from his trial attorney, the Board panel took it out and went over it in detail with petitioner at the hearing. The Board panel also took out the "resumes" and noted their general contents with petitioner. The claim therefore fails to state a prima facie case for relief (In re Bower (1985) 38 Cal.3d 865).

Petitioner next claims that the Board panel erred in referring to petitioner as having committed "robbery" of the victim, when he was never charged with nor convicted of robbery. This claim was not exhausted in the administrative appeal (In re Dexter (1979) 25 Cal.3d 921, 925; In re Serna (1978) 76 Cal.App.3d 1010, 1014). Regardless, it is meritless. That petitioner was never charged with robbery does not mean that the circumstances of the underlying offense could not be considered. Those circumstances showed that the victim's purse, car keys, and automobile were missing, giving rise to the reasonable inference that petitioner had taken them and gone to Mexico. The Board panel was not precluded from considering this. Moreover, even if the Board panel had not considered this, it would not have made a difference in the unsuitability finding, which was based more on the nature of the strangling itself and more importantly on the 1996 CDC 115. The claim, therefore, is denied.

Finally, petitioner claims that 15 Cal. Code Reg. § 2402(c)(1)(A) - (E) are unconstitutionally vague, because every murder is cruel, heinous, atrocious, and carried out in a dispassionate manner. Petitioner also claims that this language is impermissible as a usurpation of the legislative function. The court need not reach these issues, however, because the parole denial was also based on petitioner's 1996 CDC 115, which, as discussed above, alone constitutes sufficient "some evidence" to support the parole denial.

(Pet., Ex. 2.)

Petitioner subsequently filed a motion for reconsideration of the Superior Court's order and a request that the court take judicial notice of In re Ramirez, 94 Cal. App. 4th 549 (2001). That motion was denied, with the Superior Court reasoning as follows:

Ramirez is not yet final, having been decided on December 12, 2001. As such, it is subject to modification by the First District Court of Appeal, or to grant of review or depublication order by the

California Supreme Court.  It may not be considered by the court at this time.

In any event, even if the court were to consider <u>Ramirez</u>, it would not warrant reconsideration of the denial of the habeas petition.  As concluded in the denial order, that petitioner suffered a CDC 115 violation in 1996 for gambling-related matters <u>alone</u> constituted "some evidence" to support the Board of Prison Terms's denial of parole.  <u>Ramirez</u>, in its unfinal form, would not alter this conclusion, as it concerned the denial of parole to an inmate based <u>solely</u> on the commitment offense.

(Pet., Ex. 2 at consecutive p. 5.)

IV.  <u>Discussion</u>

    A.  <u>Due Process</u>

    Petitioner's first claim is that the Board's 2001 decision finding him unsuitable for parole violated his right to due process.

    The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A person alleging due process violations must first demonstrate that he or she was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  <u>Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 459-60 (1989); <u>McQuillion v. Duncan</u>, 306 F.3d 895, 900 (9th Cir. 2002).

    A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws.  <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set.  <u>Jago v. Van Curen</u>, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest."  <u>McQuillion</u>, 306 F.3d at 901 (quoting <u>Greenholtz v. Inmates of Nebraska Penal</u>, 442 U.S. 1, 12 (1979)).  California's parole scheme gives rise to a

1   cognizable liberty interest in release on parole, even for prisoners who have not already been

2   granted a parole date.  Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006);

3   Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903.  Accordingly,

4   this court must examine whether the deprivation of petitioner's liberty interest in this case lacked

5   adequate procedural protections and therefore violated due process.

6          Because "parole-related decisions are not part of the criminal prosecution, the full

7   panoply of rights due a defendant in such a proceeding is not constitutionally mandated."

8   Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and

9   citation omitted).  Where, as here, parole statutes give rise to a protected liberty interest, due

10  process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded

11  notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the

12  reasons for the denial.  Id. at 1390 (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v.

13  Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving

14  parole issues).  Violation of state mandated procedures will constitute a due process violation

15  only if the violation causes a fundamentally unfair result.  Estelle, 502 U.S. at 65.

16         In California, the setting of a parole date for a state prisoner is conditioned on a

17  finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The

18  requirements of due process in the parole suitability setting are satisfied "if some evidence

19  supports the decision."  McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S.

20  445, 456 (1985)); Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v. Estelle,

21  974 F.2d 1132, 1134 (9th Cir. 1992)).  For purposes of AEDPA, Hill's "some evidence" standard

22  is "clearly established" federal law.  See Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at 456).

23  "The 'some evidence' standard is minimally stringent," and a decision will be upheld if there is

24  any evidence in the record that could support the conclusion reached by the factfinder.  Powell,

25  33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v. McCarthy,

26  801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence underlying the board's decision

11

1   must have some indicia of reliability." <u>Jancsek</u>, 833 F.2d at 1390.  <u>See</u> <u>also</u> <u>Perveler</u>, 974 F.2d at

2   1134.  Determining whether the "some evidence" standard is satisfied does not require

3   examination of the entire record, independent assessment of the credibility of witnesses, or the

4   weighing of evidence.  <u>Toussaint</u>, 801 F.2d at 1105.  The question is whether there is any reliable

5   evidence in the record that could support the conclusion reached.  <u>Id.</u>

6               In <u>Biggs</u>, the Ninth Circuit Court of Appeals recognized that a continued reliance

7   on an unchanging factor such as the circumstances of the offense could at some point result in a

8   due process violation.  That holding has been acknowledged as representing the law of the

9   circuit.  <u>Irons v. Carey</u>, ___F.3d___, 2007 WL 656345, *5 (9th Cir. Mar. 6, 2007); <u>Sass</u>, 461

10  F.3d at 1129.  While the court in <u>Biggs</u> rejected several of the reasons given by the Board for

11  finding the petitioner unsuitable for parole, it upheld three:  (1) petitioner's commitment offense

12  involved the murder of a witness; (2) the murder was carried out in a manner exhibiting a callous

13  disregard for the life and suffering of another; and (3) petitioner could benefit from therapy.

14  <u>Biggs</u>, 334 F.3d at 913.  However, the court cautioned that continued reliance solely upon the

15  gravity of the offense of conviction and petitioner's conduct prior to that offense in denying

16  parole could violate due process.  In this regard, the court observed:

17              As in the present instance, the parole board's sole supportable
            reliance on the gravity of the offense and conduct prior to
18          imprisonment to justify denial of parole can be initially justified as
            fulfilling the requirements set forth by state law.  Over time,
19          however, should Biggs continue to demonstrate exemplary
            behavior and evidence of rehabilitation, denying him a parole date
20          simply because of the nature of his offense would raise serious
            questions involving his liberty interest in parole.
21

22  <u>Id.</u> at 916.  The court also stated that "[a] continued reliance in the future on an unchanging

23  factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the

24  rehabilitative goals espoused by the prison system and could result in a due process violation."

25  <u>Id.</u> at 917.

26  /////

1    In Sass, the Board found the petitioner unsuitable for parole at his third suitability

2 hearing based on the gravity of his convicted offenses in combination with his prior offenses.

3 461 F.3d at 1126.  Citing Biggs, the petitioner in Sass contended that reliance on these

4 unchanging factors violated due process.  The court disagreed, concluding that these factors

5 amounted to "some evidence" to support the Board's determination.  Id. at 1129.  The court

6 provided the following explanation for its holding:

> While upholding an unsuitability determination based on these
> same factors, we previously acknowledged that "continued reliance
> in the future on an unchanging factor, the circumstance of the
> offense and conduct prior to imprisonment, runs contrary to the
> rehabilitative goals espoused by the prison system and could result
> in a due process violation."  Biggs, 334 F.3d at 917 (emphasis
> added).  Under AEDPA it is not our function to speculate about
> how future parole hearings could proceed.  Cf. id.  The evidence of
> Sass' prior offenses and the gravity of his convicted offenses
> constitute some evidence to support the Board's decision.
> Consequently, the state court decisions upholding the denials were
> neither contrary to, nor did they involve an unreasonable
> application of, clearly established Federal law as determined by the
> Supreme Court of the United States.  28 U.S.C. § 2254(d).

Id.

Finally and most recently, in Irons the Ninth Circuit sought to harmonize the

holdings in Biggs and Sass, stating as follows:

> Because the murder Sass committed was less callous and cruel than
> the one committed by Irons, and because Sass was likewise denied
> parole in spite of exemplary conduct in prison and evidence of
> rehabilitation, our decision in Sass precludes us from accepting
> Iron's due process argument or otherwise affirming the district
> court's grant of relief.
>
> We note that in all the cases in which we have held that a parole
> board's decision to deem a prisoner unsuitable for parole solely on
> the basis of his commitment offense comports with due process,
> the decision was made before the inmate had served the minimum
> number of years required by his sentence. Specifically, in Biggs,
> Sass, and here, the petitioners had not served the minimum number
> of years to which they had been sentenced at the time of the
> challenged parole denial by the Board. Biggs, 334 F.3d at 912;
> Sass, 461 F.3d 1125. All we held in those cases and all we hold
> today, therefore, is that, given the particular circumstances of the

1   offenses in these cases, due process was not violated when these
    prisoners were deemed unsuitable for parole prior to the expiration
2   of their minimum terms.

3       Furthermore, we note that in <u>Sass</u> and in the case before us there
    was substantial evidence in the record demonstrating rehabilitation.
4   In both cases, the California Board of Prison Terms appeared to
    give little or no weight to this evidence in reaching its conclusion
5   that Sass and Irons presently constituted a danger to society and
    thus were unsuitable for parole. We hope that the Board will come
6   to recognize that in some cases, indefinite detention based solely
    on an inmate's commitment offense, regardless of the extent of his
7   rehabilitation, will at some point violate due process, given the
    liberty interest in parole that flows from the relevant California
8   statutes. <u>Biggs</u>, 334 F.3d at 917.

9   <u>Irons</u>, 2007 WL 656345, *5-6.

10          Whatever uncertainty there may be as to the law of the circuit following the

11   decisions in <u>Biggs</u>, <u>Sass</u> and <u>Irons</u>, petitioner is not entitled to federal habeas relief on his

12   challenge to the 2001 Board decision denying him parole.[2]  In this case, the Board commenced its

13   decision finding petitioner unsuitable for parole by stating that the panel had reviewed "all

14   information received from the public" and had concluded that "the prisoner is not yet suitable for

15   parole and would pose an unreasonable risk of danger to society or a threat to public safety if

16   released from prison."  (Answer, Ex. A at 55.)  The phrases "unreasonable risk of danger to

17   society" and "a threat to public safety" are derived from § 3041(b) of the California Penal Code

18   and § 2281(a) of Title 15 of the California Code of Regulations.  Pursuant to this statute,

19       [t]he panel or board shall set a release date unless it determines that
    the gravity of the current convicted offense or offenses, or the
20   timing and gravity of current or past convicted offense or offenses,
    is such that consideration of the public safety requires a more
21   lengthy period of incarceration for this individual, and that a parole
    date, therefore, cannot be fixed at this meeting.
22

23   Cal. Penal Code § 3041(b).

24   _____

25       [2]  It does appear that since his judgment of conviction was entered in 1986, that by the
    time of the Board's 2001 decision, petitioner had served or nearly served the minimum number
26   of years required by his fifteen years to life sentence.  <u>See</u> <u>Irons v. Carey</u>, ___F.3d___, 2007 WL
    656345, *5 (9th Cir. Mar. 6, 2007).

1    The state regulation that governs parole suitability for life prisoners states as

2    follows with regard to the statutory requirement of California Penal Code § 3041(b):

3    "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied

4    parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to

5    society if released from prison."  Cal. Code Regs. tit. 15, § 2281(a).  The same regulation

6    requires the Board to consider all relevant, reliable information available regarding

7           the circumstances of the prisoner's social history; past and present
       mental state; past criminal history, including involvement in other

8           criminal misconduct which is reliably documented; the base and
       other commitment offenses, including behavior before, during and

9           after the crime; past and present attitude toward the crime; any
       conditions of treatment or control, including the use of special

10          conditions under which the prisoner may safely be released to the
       community; and any other information which bears on the

11          prisoner's suitability for release.

12   Cal. Code Regs. tit. 15, § 2281(b).

13       The regulation identifies circumstances that tend to show suitability or

14   unsuitability for release.  Id., § 2281(c) & (d).  The following circumstances tend to show that a

15   prisoner is suitable for release:  the prisoner has no juvenile record of assaulting others or

16   committing crimes with a potential of personal harm to victims; the prisoner has experienced

17   reasonably stable relationships with others; the prisoner has performed acts that tend to indicate

18   the presence of remorse or has given indications that he understands the nature and magnitude of

19   his offense; the prisoner committed his crime as the result of significant stress in his life; the

20   prisoner's criminal behavior resulted from having been victimized by battered women syndrome;

21   the prisoner lacks a significant history of violent crime; the prisoner's present age reduces the

22   probability of recidivism; the prisoner has made realistic plans for release or has developed

23   marketable skills that can be put to use upon release; institutional activities indicate an enhanced

24   ability to function within the law upon release.  Id., § 2281(d).

25       The following circumstances tend to indicate unsuitability for release:  the

26   prisoner committed the offense in an especially heinous, atrocious, or cruel manner; the prisoner

15

had a previous record of violence; the prisoner has an unstable social history; the prisoner's

crime was a sadistic sexual offense; the prisoner had a lengthy history of severe mental problems

related to the offense; the prisoner has engaged in serious misconduct in prison. Id., § 2281(c).

Factors to consider in deciding whether the prisoner's offense was committed in an especially

heinous, atrocious, or cruel manner include: multiple victims were attacked, injured, or killed in

the same or separate incidents; the offense was carried out in a dispassionate and calculated

manner, such as an execution-style murder; the victim was abused, defiled or mutilated during or

after the offense; the offense was carried out in a manner that demonstrated an exceptionally

callous disregard for human suffering; the motive for the crime is inexplicable or very trivial in

relation to the offense. Cal. Code Regs., tit. 15, § 2281(c)(1)(A) - (E). Under current California

law, the Board is apparently not required to refer to sentencing matrixes or compare the

prisoner's crime to other crimes of the same type in deciding whether the crime was especially

cruel or exceptionally callous but may find the crime especially cruel or exceptionally callous if

there was violence or viciousness beyond what was "minimally necessary" for a conviction. In re

Dannenberg, 34 Cal. 4th 1061, 1095 (2005).

The Board, in addressing the factors considered in reaching its decision that

petitioner was unsuitable for parole, provided as follows:

> PRESIDING COMMISSIONER LAWIN: Thank you. We're
> back on the record, and all parties have returned to the room in the
> hearing for Gary Eccher. The Panel has reviewed all information
> received from the public and relied on the following circumstances
> in concluding that the prisoner is not yet suitable for parole and
> would pose an unreasonable risk of danger to society or a threat to
> public safety if released from prison. The commitment offense was
> carried out in an especially cruel manner. It was the murder of
> Leann Lando. She was strangled after the inmate and she
> apparently had a disagreement, altercation, the report reads,
> relative to cocaine. He apparently hit her with a light – a lamp, and
> then strangled her with the cord. She was found in the bathroom of
> her residence, and was found by friends who had come to the
> home. The inmate then fled to Mexico. He was arrested about a
> month later. He also took with him when he left the residence her
> purse, drugs and money as well. And this offense was carried out
> in a manner which demonstrates an exceptionally callous disregard

16

for human suffering.  The prisoner had an escalating pattern of criminal conduct.  He had minor record prior to the commitment offense.  It included larceny and aggravated assault, which was apparently dismissed.  He had a drunk driving arrest for which he was convicted, and then he had other occasions to be arrested or retained [sic] relative to his business and alcohol being served to minors.  Again, they were detentions or arrests only.  He also has, in terms of history and criminality, he began using cocaine around 1979.  He then – or prior to that had used marijuana as a teenager, and he used alcohol as well.  The prisoner has not sufficiently participated in beneficial self help programs, and he has failed to demonstrate evidence of positive change in that he does have what we consider to be a recent 115.  That was December 1996 for bookmaking, which was changed to possession of gambling paraphernalia.  He has a total of three 115's since his incarceration, and two 128a counseling chronos.  The hearing Panel notes that responses to PC 3042 notices indicate opposition to a finding of parole suitability, specifically from the District Attorney's Office of Orange County as well as from the victim next of kin.  The Panel makes the following findings.  The prisoner needs therapy in order to face, discuss, understand and cope with stress in a non-destructive manner, and until further progress is made, the prisoner continues to be unpredictable and a threat to others.  And the prisoner's gains are recent.  He must demonstrate the ability to maintain gains over an extended period of time, and specifically I'm talking about the disciplinary violation of 1996.  It has been four years since that last discipline.  And he is to be commended for the fact that he has only received three 115's since his incarceration, again, the last one a little over four years ago.  He's also to be commended for the fact that he has programmed exceptionally well.  He has acquired two certifications as paralegal and mill and cabinet.  He has become, I don't know what level to call it, but he is a leather crafter and has obviously become very proficient in that field to the extent that he's able to acquire a contract with CDC for the production of leather goods.  He has also participated in NA and or AA, some form of substance abuse.  There are various accounts as to when that participation began, but it would appear that it has been solid since 1993, and may, in fact, been for 10 years.  He's also to be commended for participation in Anger Management, Alternatives to Violence, and in Yoga.  He's had numerous commendations or chronos commending his work and his actions, one fairly recent one from the senior librarian who commends him for his work for the last five years.  And that work has been as a law clerk in the inmate library.  However, these positive aspects of his behavior do not yet outweigh the factors of unsuitability.  This is a two year denial.  In a separate decision, the Hearing Panel finds it is not reasonable to expect that parole would be granted at a hearing during the following two years.  The specific reasons for this finding are as follows.  The prisoner committed the offense in an especially cruel manner.  It is the murder of Leann Lando.  She was strangled to death, left in the

17

bathroom of her residence.  This occurred after the inmate and she apparently got into an altercation relative to cocaine.  After he committed this offense, he then fled the country and went to Mexico where he was later arrested.  He has also taken from the residence the victim's purse and some drugs and money as well.  And this offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.  Ms. Lando was found by friends who had come over for a prearranged party.  And the motive for the crime was very trivial in relation to the offense.  The prisoner does have a history of misconduct which includes a number of arrests.  He has one conviction for driving under the influence.  The other arrests were for items related – or actions related to a business he and his father owned, a bar or nightclub, and he had one larceny for which he had stolen two bicycles.  And that was also dismissed.  His misconduct included smoking marijuana prior to his senior year in high school, something he appeared to continue to some degree.  And then he began using cocaine in about 1979.  And he recently committed a serious disciplinary violation in that the last 115 was four years ago for possession of gambling paraphernalia.  The prisoner has not completed the necessary programming which is essential to his adjustment and needs additional time to gain such programming.  And that specifically relates to his AA NA participation and any other self help programs that become available to him.  Therefore, a longer period of observation is required before the Board should find him suitable for parole.  During the next two years, the Panel recommends that the prisoner remain disciplinary free.  Not even any 128's.  And, if available, participate in self help.  Mr. Eccher, you're doing remarkably well.  This Panel was very impressed, not only with your presentation and with your preparation, but with all that you are doing.  And we encourage you to keep up the good work.  You – that 115 is bothersome because it was four years ago, and it does indicate, still, a lack of following rules, if nothing more.  So, we look forward to your putting some space between that 115 and your next hearing.  But, again, we encourage you to keep up the excellent work that you are doing.

(Answer, Ex. A at 55-60.)

        Under the circumstances presented here, this court cannot say that the record of petitioner's January 11, 2001 suitability hearing is "so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."  Hill, 472 U.S. at 457.  In fact, the facts in this case are similar in many respects to those in Sass, where the petitioner was found unsuitable for parole at his third suitability hearing based on the commitment offense and the petitioner's prior criminal history.  As discussed above, the Ninth Circuit concluded that these

1 factors amounted to "some evidence" to support the Board's determination.  Sass, 469 F.3d at

2 1129.  Further, it was not unreasonable for the Board to conclude that petitioner's crime was

3 "especially cruel" and demonstrated a "callous disregard for human suffering," where petitioner

4 strangled the victim with an electrical cord and "savagely" beat her on the face and head in a

5 dispute over drugs.  In addition, in this case the California Superior Court noted that petitioner

6 suffered a serious disciplinary conviction for possession of gambling paraphernalia four years

7 prior to the parole consideration hearing.  This alone is enough to distinguish petitioner's case

8 from one in which continued and repeated reliance on unchanging factors such as the

9 circumstances of the offense and conduct prior to imprisonment may run afoul of due process.

10 Certainly, petitioner's serious disciplinary conviction is significant additional evidence

11 supporting the Board's decision finding him unsuitable for parole in 2001.  Accordingly, under

12 the circumstances of this case, petitioner is not entitled to relief on his due process claim.[3]

13    B.  Ex Post Facto Claim

14       Petitioner claims that the Board violated the federal constitutional prohibition on

15 ex post facto laws when it denied him parole in 2001.  He argues that the Board has interpreted

16 the criteria for a finding of parole suitability more stringently in the years since 1985, resulting in

17
_____

18   [3]  As described above, petitioner has made several claims that the Board's decision to find him unsuitable for parole violated California law.  Specifically, petitioner contends that: (1) the

19 Board is failing to set parole release dates in a manner that provides uniform terms for inmates who have committed offenses of similar gravity and magnitude, in violation of California law;

20 (2) he has already served more time than California law requires for his crime; and (3) he has served more time in prison than other inmates who have committed similar or more serious

21 crimes.  Petitioner argues that the BPT is required to adhere to a certain formula (the "Matrix System") in setting his release date.  Many of petitioner's arguments in this regard were recently

22 rejected by the California Supreme Court in In re Dannenberg, 34 Cal. 4th at 1061 (holding that the Board is not required to refer to its sentencing matrices or to compare other crimes of the

23 same type in deciding whether a prisoner is suitable for parole).  More importantly for purposes of this federal habeas corpus action, petitioner has not cited any federal law for the proposition

24 that the Due Process Clause requires a state parole board to either set a parole date where the board members believe a prisoner poses an unreasonable risk of danger to society, engage in a

25 comparative analysis before denying parole suitability, or to set a parole date within a state's "matrix."  Petitioner's arguments that the state court has erred in applying state sentencing laws

26 to his release date are not cognizable in this federal habeas corpus proceeding.  Estelle, 502 U.S. at 67-68.

a 10 - 15% decrease in the number of inmates who are found suitable for parole.  (Pet. at 14.) Petitioner contends that he would have been found suitable for parole if his hearings had taken place prior to 1985.  In this vein, petitioner argues that the Board is "subtly altering the definition" of the phrase "callous disregard for human suffering" to include within its reach virtually any murder.  (Id. at 15.)  Petitioner compares the length of time he has remained in prison to the prison terms of other prisoners who, in petitioner's view, committed more heinous crimes than his.  Finally, petitioner argues that former Governor Gray Davis had an unlawful policy against parole for inmates convicted of murder.

The Constitution provides that "No State shall ... pass any ... ex post facto Law." U.S. Const. art. I, § 10.  Himes v. Thompson, 336 F.3d 848, 854 (9th Cir. 2003).  A law violates the Ex Post Facto Clause of the United States Constitution if it: (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed.  See Collins v. Youngblood, 497 U.S. 37, 52 (1990).  The Ex Post Facto Clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts."  Himes, 336 F.3d at 854 (quoting Souch v. Schaivo, 289 F.3d 616, 620 (9th Cir. 2002)) (quoting Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 504 (1995)).  The Ex Post Facto Clause is also violated if: (1) state regulations have been applied retroactively to a defendant; and (2) the new regulations have created a "sufficient risk" of increasing the punishment attached to the defendant's crimes.  Himes, 336 F.3d at 854.  Not every law that disadvantages a defendant is a prohibited ex post facto law.  In order to violate the clause, the law must essentially alter "the definition of criminal conduct" or increase the "punishment for the crime."  Lynce v. Mathis, 519 U.S. 433, 441-42 (1997).  See also Morales, 514 U.S. at 504, 506-07 & n.3.

Petitioner has failed to demonstrate that the Board's decision finding him unsuitable for parole resulted from a new law that retroactively increased his punishment or altered the definition of his crime.  Petitioner does not contend that current parole regulations are

1    more onerous than those in place at the time he committed his offense.  In fact, he concedes that

2    the parole regulations have not changed.  Although petitioner claims that the current Board is

3    refusing to grant parole to prisoners who would have been found suitable for release in previous

4    years, he has failed to demonstrate that this has occurred because of a change in the law or a

5    change in the definition of criminal conduct.  In other words, even assuming that petitioner is

6    correct in contending that the Board is finding fewer prisoners suitable for parole, he has failed to

7    show that this is a result of a new law that is being applied retroactively to him, in violation of

8    the Ex Post Facto Clause.  As described above, there was reliable and credible evidence before

9    the Board to support its decision finding petitioner unsuitable for parole in 2001.

10                Petitioner's argument that his sentence is longer than sentences given to other

11   individuals convicted of crimes more serious than his, is in the nature of an Eighth Amendment

12   claim as opposed to an ex post facto claim.  However, the Eighth Amendment "'does not require

13   that a defendant's sentence be harmonized with the sentences imposed by other courts on other

14   defendants.'"  United States v. Zavala-Serra, 853 F.2d 1512, 1518 (9th Cir. 1988).  Accordingly,

15   petitioner's claim in this regard lacks merit and relief should be denied.

16                Petitioner also claims that the Board's refusal to find him suitable for parole was

17   based on an illegal gubernatorial policy against parole for inmates convicted of murder and not

18   on the individual circumstances of his case.  Petitioner has failed to substantiate this allegation

19   with credible proof of such an illegal policy.  Accordingly, this argument does not lend support to

20   petitioner's ex post facto claim.  Petitioner has failed to provide evidence that such a "no parole"

21   policy on the part of a former governor played any part in the Board's decision to find petitioner

22   unsuitable for parole.  As discussed above, independent of any alleged policy, there was "some

23   evidence" in the record to support the Board's decision.  See In re Rosenkrantz, 29 Cal. 4th 616,

24   684-86 (2002) (California Supreme Court rejecting petitioner's claim that the decision of a

25   former Governor to reverse a parole suitability decision of the Board resulted from a blanket

26   /////

1  policy of denying parole in all murder cases because there was "some evidence" to support the

2  Governor's decision).

3          For the foregoing reasons, petitioner is not entitled to relief on his ex post facto

4  claim.

5          C.  Unconstitutionally Vague

6          Petitioner next claims that "utilization of the language found in § 2402(c)(1)(A-E)

7  as a reason for parole unsuitability is unconstitutional, as the terms used therein are too vague to

8  have any discernible meaning."  (Pet. at 11.)

9          A statute or regulation is void for vagueness "if it fails to give adequate notice to

10  people of ordinary intelligence concerning the conduct it proscribes or if it invites arbitrary and

11  discriminatory enforcement."  United States v. Doremus, 888 F.2d 630, 634 (9th Cir. 1989).  In

12  Butler v. Calderon, 1998 WL 387612 (N.D. Cal. 1998), the court found that a prisoner's

13  vagueness challenge to standards relied upon by the Board at a parole hearing must fail where the

14  prisoner had received the process due under the decision in Greenholtz v. Inmates of Nebraska

15  Penal.  Id. at *5.  As set forth above, petitioner's parole suitability hearing under attack here

16  satisfied the requirements of due process; therefore, petitioner's vagueness claim is without merit.

17  Id.; see also Glauner v. Miller, 184 F.3d 1053, 1055 (9th Cir.1999) (per curiam) (statute requiring

18  that an inmate be certified "not a menace to the health, safety or morals of others" before being

19  eligible for parole was not unconstitutionally vague); Pedro v. Oregon Parole Bd., 825 F.2d 1396,

20  1399 (9th Cir. 1987) (rejecting claim that due process required articulation of a standard

21  definition of the term "significant planning and preparation" in the parole context).[4]

22          In addition, it does not appear that California Code of Regulation Title 15, §

23  2402(c)(1) has been found to be unduly vague or overbroad under federal law.  Nor has federal

24  _____

25          [4] Claims similar to that presented by petitioner in this regard have been rejected by
several California district courts.  See Winston v. California Bd. of Prison Terms, 2006 WL
845584, *2 (E.D. Cal. 2006); Sariaslan v. Butler, 2004 WL 2203472, *5 (N.D. Cal. 2004);

26  Masoner v. California, 2004 WL 1080177, *1 (C.D. Cal. 2004).

1    law been found to preclude the use of terms such as "especially cruel" or "callous" as guidelines

2    in Board parole suitability evaluations.  Cf. Maynard v. Cartwright, 486 U.S. 356 (1988) (in a

3    capital case, the "especially heinous, atrocious, or cruel" aggravating circumstance was

4    unconstitutionally vague because it did not offer sufficient guidance to the jury in deciding

5    whether to impose the death penalty); Tuilaepa v. California, 512 U.S. 967, 972 (1994);

6    (statutory aggravating circumstances in capital cases "may not be unconstitutionally vague").

7    Accordingly, the opinion of the California Court of Appeal upholding the constitutionality of this

8    statute is not contrary to or an unreasonable application of clearly established federal law and

9    may not be set aside.  28 U.S.C. § 2254(d)(1).

10          D.  Americans With Disabilities Act

11          Petitioner also claims that the Board discriminated against him when it found him

12   unsuitable for parole, in violation of the Americans with Disabilities Act (ADA).  Petitioner

13   claims that he "has been denied a parole release date on 3 different occasions primarily due to his

14   substance abuse history/addict."  (Pet. at 13.)  He also claims that "the [Board] follows an

15   unwritten policy of denying parole to prisoners with substance abuse histories in violation of

16   Title II of the ADA."  (Id.)

17          Title II of the ADA provides that:"no qualified individual with a disability shall,

18   by reason of such disability, be excluded from participation in or be denied the benefits of the

19   services, programs, or activities of a public entity, or be subjected to discrimination by any such

20   entity."  42 U.S.C. § 12132.  Claims brought pursuant to the ADA are cognizable in habeas

21   corpus actions.  See Bogovich v. Sandoval, 189 F.3d 999, 1004 (9th Cir. 1999).  Similarly, the

22   Ninth Circuit has held that plaintiffs bringing an action for prospective injunctive relief against

23   state parole authorities "may state a claim under Title II [of the ADA] based on their allegations

24   that the parole board failed to perform an individualized assessment of the threat they pose to the

25   community by categorically excluding from consideration for parole all people with substance

26   abuse histories."  Thompson v. Davis, 295 F.3d 890, 894 n.4 (9th Cir. 2002).  However, the court

1   also recognized that the ADA does not bar any consideration of an inmate's disability in making

2   individualized assessment of the future dangerousness of the inmate; but rather bars only the

3   categorical denial of parole to persons with disabilities.  Id.

4        Here, petitioner was not categorically denied parole based on his history of

5   substance abuse but, as described above, was afforded an individualized assessment of his

6   suitability for parole.  Petitioner's past history of substance abuse was a legitimate factor for the

7   Board to take under consideration, along with other factors, in determining whether he was

8   suitable for release on parole.  The mere fact that the Board advised petitioner to participate in

9   programs for persons addicted to substance abuse does not demonstrate that the decision finding

10  petitioner unsuitable for parole resulted from a policy of discriminating against drug addicts.

11  There is no credible evidence that discrimination played any part in the Board's decision.  In

12  short, petitioner has failed to demonstrate that the Board's refusal to find him suitable for parole

13  "was by reason of [his] disability."  Thompson, 295 F.3d at 895.  Accordingly, petitioner is not

14  entitled to habeas relief on his ADA claim.

15  V.  Requests for Judicial Notice

16       On June 30, 2001, petitioner filed a motion requesting that this court take judicial

17  notice of two habeas corpus cases filed in this court (Saif'ullah v. Carey, Case No. CIV S-02-

18  2664 MCE DAD P and Blair v. Folsom State Prison, Case No. CIV S-04-2257 MCE GGH P),

19  and an order from the California Court of Appeal in which petitioner's challenge to his 2003

20  parole consideration hearing was granted.  On November 20, 2006, petitioner filed a motion

21  requesting that the court take judicial notice of an opinion by the California Court of Appeal in

22  the case of In re Wen Lee.   The court has read and considered the cases and order submitted by

23  petitioner in his two motions for judicial notice.  Accordingly, petitioner's requests for judicial

24  notice will be granted.  See United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (a court

25  "may take judicial notice of a document filed in another court 'not for the truth of the matters

26  asserted in the other litigation, but rather to establish the fact of such litigation and related

1    filings'") (quoting <u>Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.</u>, 969 F.2d 1384, 1388-89

2    (2d Cir. 1992)). <u>See also</u> <u>San Luis v. Badgley</u>, 136 F. Supp. 2d 1136, 1146 (E.D. Cal. 2000)

3    (federal courts may "take notice of proceedings in other courts, both within and without the

4    federal judicial system, if those proceedings have a direct relation to the matters at issue")

5    (quoting <u>U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244, 248

6    (9th Cir.1992)).

7           Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that

8    petitioner's June 30, 2006 and November 20, 2006 motions for judicial notice are granted.

9           IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

10   habeas corpus be denied.

11          These findings and recommendations are submitted to the United States District

12   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

13   days after being served with these findings and recommendations, any party may file written

14   objections with the court and serve a copy on all parties.  Such a document should be captioned

15   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16   shall be served and filed within ten days after service of the objections.  The parties are advised

17   that failure to file objections within the specified time may waive the right to appeal the District

18   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

19   DATED: March 19, 2007.

20

21

22                   DALE A. DROZD
                    UNITED STATES MAGISTRATE JUDGE

23

24   DAD:8:eccher20.hc

25

26